12/31/15 RBS

Filing # 36029535 E-Filed 12/30/2015 03:12:56 PM

RUSH

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

| CIVIL DIVISION | CIVIL ACTION SUMMONS | CASE NUMBER |
|---|---|---|
| | (En Espanol al Dorso)   (Francais Au Verso) | |

| PLAINTIFF | v. DEFENDANT | CLOCK IN |
|---|---|---|
| VAPOR CORP | PORZIO, BROMBERG & NEWMAN, P.C | |

| To Defendant: PORZIO, BROMBERG & NEWMAN, P.C | Address: | REGISTERED AGENT: D. Jeffrey Campbell 1200 New Hampshire Avenue, NW, Ste. 710 Washington, DC 20036-6802 |
|---|---|---|

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

Clerk of the Court
Broward County Court
201 S.E. Sixth Street
Ft. Lauderdale, FL 33301
(954) 861-6610

You must also mail or take a copy of your written response to the person named below and file your response to the Court,

AMERICANS WITH DISABILITIES ACT OF 1990
In accordance with The Americans With Disabilities Act of 1990 (ADA), persons with disabilities needing a special accommodation to participate in this proceeding should contact the Court ADA Coordinator at 201 S.E. 6 St., Ft. Lauderdale, FL 33301, Telephone: 954-831-7721, or if hearing or speech impaired, TDD/TTY: 954-831-7017, within two (2) days of your receipt of this legal notice.  If hearing or voice impaired, you may also call TDD/TTY: 800-955-8771 via Florida Relay Service.

| Plaintiff/Plaintiff Attorney: Philippe Lieberman, Esq. FBN: 27146 plieberman@klugerkaplan.com Richard I. Segal, Esq. FBN: 57187 rsegal@klugerkaplan.com | Address: Kluger, Kaplan, Silverman, Katzen & Levine, P.L. 201 S. Biscayne Blvd., 27th Floor Miami, FL 33131 (305) 379-9000 |
|---|---|

TO EACH SHERIFF OF THE STATE OF FLORIDA:

| CLERK OF THE COURT | By: | Court Seal | DATE |
|---|---|---|---|
| | | | DEC 31 2015 |

HOWARD C. FORMAN

*** FILED: BROWARD COUNTY, FL HOWARD C. FORMAN, CLERK 12/30/2015 3:12:55 PM.****

IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefónica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la quía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante).

IMPORTANT

Des poursuites judiciares ont été entreprises contre vous.  Vous avez 20 jours consécutifs à partir de la date de l'assignation de cette citation pour déposer une reponse écrite à la plainte ci-jointe auprès de ce tribunal.  Un simple coup de téléphone est insuffisant pour vous protéger; vous êtes obligé de déposer votre réponse écrite, avec mention du numéro de dossier ci-dessus et du nom des parties nommées ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne déposez pas votre reponse écrite dans le délai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun préavis ultérieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requérir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez téléphoner à un service de reference d'avocats ou a un bureau d'assistance juridique (figurant à l'annuaire de téléphones).

Si vous choisissez de déposer vous-même une réponse écrite, il vous faudra également, en même temps que cette formalité, faire parvenir ou expédier une copie de votre response ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nommé ci-dessous.

Filing # 36029535 E-Filed 12/30/2015 03:12:56 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

| I. | CASE STYLE |
|---|---|

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

Case No.:_____
Judge: _____

Vapor Corp.
Plaintiff

vs.

Porzio, Bromberg & Newman, P.C.
Defendant

| II. | TYPE OF CASE |
|---|---|

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
   ☐ Business governance
   ☐ Business torts
   ☐ Environmental/Toxic tort
   ☐ Third party indemnification
   ☐ Construction defect
   ☐ Mass tort
   ☐ Negligent security
   ☐ Nursing home negligence
   ☐ Premises liability – commercial
   ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
   ☐ Commercial foreclosure $0 - $50,000
   ☐ Commercial foreclosure $50,001 - $249,999
   ☐ Commercial foreclosure $250,000 or more
   ☐ Homestead residential foreclosure $0 – 50,000
   ☐ Homestead residential foreclosure $50,001 - $249,999
   ☐ Homestead residential foreclosure $250,000 or more
   ☐ Non-homestead residential foreclosure $0 - $50,000
   ☐ Non-homestead residential foreclosure $50,001 - $249,999
   ☐ Non-homestead residential foreclosure $250,00 or more

☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
   ☐ Malpractice – business
   ☐ Malpractice – medical
   ☐ Malpractice – other professional
☐ Other
   ☐ Antitrust/Trade Regulation
   ☐ Business Transaction
   ☐ Circuit Civil - Not Applicable
   ☐ Constitutional challenge-statute or ordinance
   ☐ Constitutional challenge-proposed amendment
   ☐ Corporate Trusts
   ☐ Discrimination-employment or other
   ☐ Insurance claims
   ☐ Intellectual property
   ☐ Libel/Slander
   ☐ Shareholder derivative action
   ☐ Securities litigation
   ☐ Trade secrets
   ☐ Trust litigation

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐  No ☒

III. **REMEDIES SOUGHT** (check all that apply):

☒  Monetary;
☐  Non-monetary
☐  Non-monetary declaratory or injunctive relief;
☐  Punitive

IV. **NUMBER OF CAUSES OF ACTION: (    )**
(Specify)

<u>4</u>

V. **IS THIS CASE A CLASS ACTION LAWSUIT?**

☐  Yes
☒  No

VI. **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**

☒  No
☐  Yes – If "yes" list all related cases by name, case number and court:

VII. **IS JURY TRIAL DEMANDED IN COMPLAINT?**

☒  Yes
☐  No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature <u>s/ Philippe Lieberman</u>            FL Bar No.: <u>27146</u>
        Attorney or party                                                      (Bar number, if attorney)

<u>Philippe Lieberman</u>   <u>12/30/2015</u>
   (Type or print name)                        Date

Filing # 36029535 E-Filed 12/30/2015 03:12:56 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: _____

VAPOR CORP.,

     Plaintiff,

vs.

PORZIO, BROMBERG & NEWMAN, P.C.,

     Defendant.

_____/

## COMPLAINT

Plaintiff, VAPOR CORP. ("Vapor"), through undersigned counsel, sues Defendant, PORZIO, BROMBERG & NEWMAN, P.C. ("Porzio"), and alleges:

### PARTIES, JURISDICTION AND VENUE

1.   This is an action for compensatory damages exceeding fifteen thousand dollars ($15,000.00), exclusive of interest, costs, and attorneys' fees.

2.   Vapor is a Delaware corporation which operates its principal place of business in Broward County at 3001 Griffin Road, Dania Beach, Florida.

3.   Porzio is a New Jersey professional corporation which has law offices in New Jersey, Washington D.C., New York, and Massachusetts.   Porzio conducts business and represents clients throughout the United States, including Broward County, Florida.

1

4. Jurisdiction is proper in this Court because the causes of action alleged herein accrued, and the tortious acts were committed in Broward County, Florida.

5. Porzio operates, conducts, engages in and solicits substantial business in this jurisdiction through its representation of Vapor and other entities, and in connection with these business activities, Porzio holds meetings, conducts investigations and conducts discovery and depositions in the State of Florida.

6. In representing Vapor from 2011 through the present on patent litigation matters and intellectual property transactions, Porzio attended multiple weeks of depositions and engaged in meetings and conferences in Florida, provided continued business advice, directed numerous communication towards and payments from Florida.

7. Venue is proper in this judicial district because both parties conduct substantial businesses in Broward County, Florida, and the conduct and damages giving rise to this action occurred in Broward County, Florida.

8. All conditions precedent to the filing of this action have occurred, been met or waived.

## GENERAL ALLEGATIONS

### The Parties at Issue

9. Vapor is a publically traded company on the NASDAQ that designs, markets and distributes electronic cigarettes, vaporizers, and accessories. As detailed below, Vapor underwent a merger in March 2015, acquiring Vaporin, Inc., with Vapor being the surviving entity.

2

10. Porzio markets and promotes itself as s a multidisciplinary law practice consisting of ninety (90) attorneys representing clients throughout the United States, with an alleged specialty in intellectual property and patent litigation.

11. Porzio's self-promoted "core values" consist of the following:

- We serve the best interests of our clients;
- Our clients are our paramount responsibility;
- We listen to them and understand their needs and goals; and
- We efficiently employ our resources and substantive knowledge, skills and experiences to achieve our clients' objectives.

12. Porzio maintains an office in Washington D.C. (the "Washington D.C. Office"), which consists of eight attorneys, three principals (commonly referred to as partners), two "of counsel," and three associates. Kevin Bell, Esq. ("Bell") is a partner in the Washington D.C. Office. The two other partners in the Washington D.C. Office are Richard Oparil ("Oparil") and Scott Chambers ("Chambers") (collectively the "Bell Team").

13. As detailed below, the Bell Team joined Porzio in or about August 2014.

**The Beginning of the Attorney-Client Relationship between the Bell Team and Vapor**

14. Prior to Porzio, the Bell Team worked at Patton Boggs, LLP ("Patton"), a law firm in Washington D.C.

15. On or about September 10, 2011, Adam Laufer ("Laufer"), on behalf of Vapor, retained Patton, and in particular the Bell Team, to represent Vapor in patent litigation against Ruyan Investment (Holdings) Limited ("Ruyan Litigation").

16. Throughout the Bell Team's representation, Vapor was clear that it was not interested in being represented by litigation counsel that merely went through the "procedures," churned the file, and who were not concerned with costs and the "end goal."

3

17.     Indeed, after noticing increased invoices with very little explanation, on or about July 10, 2012, Laufer, on behalf of Vapor, instructed the Bell Team that the attorneys' fees were mounting up too fast, that Bell needed to work smarter and limit spending, and that Patton was hired with the understanding that Bell would control costs and not to "simply march down the typical litigation path."

18.     On or about July 22, 2012, Laufer again reiterated the concerns over staggering legal fees. Laufer specifically questioned the lack of disclosure regarding work to be performed and the corresponding amount of monthly fees to be incurred. Laufer instructed the Bell Team that going forward Vapor must give consent before significant fees are incurred.

**The Bell Team Represented Vapor in the Fontem Litigation**

19.     In 2014, Fontem Holdings 1 BV and Fontem Ventures BV filed a series of patent infringement lawsuits against numerous defendants, including Vapor in the United States District Court for the Central District of California. Most or all of these cases were consolidated into the case styled, *Fontem Ventures v. NJoy, Inc. et al.,* Case No. CV14-1650-GW (MRWx) ("Fontem Litigation").

20.     The Fontem Litigation, briefly summarized, involves Fontem's claims of patent infringement against Vapor and at least eight (8) other defendants in the e-cigarette, vaporizer, and tobacco industry. The Fontem Litigation involved plaintiffs whom obtained the rights to various broad patents that cover nearly all of the common products manufactured, distributed, and retailed in the industry. Fontem had no real intention to take the case to trial – its ultimate goal was and is to obtain lucrative licensing deals from several defendants, including Vapor.

21.     Harlen Press ("Press"), on behalf of Vapor, retained Porzio, and in particular, the Bell Team, to represent Vapor in the Fontem Litigation.

4

**The Bell Team Capitalizes on an Opportunity and Transfers its Practice from Patton Boggs to Porzio Continuing to Represent Vapor**

22.     Upon information and belief, in or about August 2014, the Bell Team using Vapor as a feather in its origination cap changed law firms from Patton to Porzio.

23.     On or about October 17, 2014, Bell on behalf of Porzio, provided Press with a new engagement letter with Porzio, and in particular the Bell Team, to represent Vapor in the Fontem Litigation ("Engagement Letter"). A true and correct copy of the Engagement Letter is attached as **Exhibit "A."**

24.     The Engagement Letter did not require execution and did not include or attach the referenced addendum or "Billing Policy."

25.     As a result of Porzio's core values and specialty in intellectual property and patent litigation Vapor retained Porzio to represent Vapor in the Fontem Litigation and entrusted and relied on Porzio to advise Vapor and act in its best interest.

26.     Pertinent here, the Engagement Letter contains the following key terms guiding the relationship:

- Vapor retain[s] the right to make all final decisions;
- Vapor should expect to be informed at reasonable intervals as to how a matter is progressing;
- Porzio and the Bell Team agreed to use their best professional and ethical efforts on Vapor's behalf;
- The Bell Team's role is to counsel Vapor and advise of legal consequences and possible courses of action;
- Vapor's role is to consider the Bell Team's advice and to decide upon the course of action to follow; and
- Porzio's objective is to charge a reasonable fee for services rendered.

27.     Porzio owed Vapor an obligation of trust, loyalty, honesty, and integrity, a fiduciary obligation to protect and preserve the best interest of Vapor.

5

28.    On or about November 21, 2014, in the early stages of the Fontem Litigation, Press, on behalf of Vapor, advised Porzio that Vapor wanted to avoid spending substantial sums of money on attorneys' fees, and that Porzio needs to develop a strategy to keep the attorneys' fees to a minimum as Vapor cannot afford to incur additional costs.

29.    Vapor relied upon Porzio to represent Vapor diligently and to timely disclose when, if at all, fees were to become significant.

30.    In line with Vapor's instructions, the invoices issued by Porzio in the Fontem Litigation from the beginning of the lawsuit in October 2014 through March 2015 (referred to throughout as the "Pre-Merger" period) totaled an aggregate of $209,322.65. In the Pre-Merger Period the average monthly invoice from Porzio was $34,887.19.

**Porzio's Billing Practices Become Predatory Once Vapor Undergoes a Merger and Substantial Capital Raise**

31.    In or about March 2015, Vaporin, Inc. ("Vaporin"), an electronic cigarette public company in which Gregory Brauser ("Brauser") was an officer, merged with Vapor, which merger was bolstered by a subsequent $40 million capital raise breathing cash flow into Vapor. The post merger period shall be referred to as "Post Merger."

32.    Shortly after the merger Brauser was named the President of Vapor, Jeffrey Holman ("Holman") the Chief Executive Officer, and Jim Martin ("Martin") the Chief Financial Officer, who was later succeeded by Gina Hicks ("Hicks") (collectively, the "Brauser Team"). The Brauser Team took over control of Vapor Post Merger.

33.    On April 3, 2015, Porzio congratulated the Brauser Team on the merger and acquisition of Vapor.

34.    Porzio did not provide a new retainer or engagement letter for the Brauser Team to execute in regards to the Fontem Litigation.

6

35.     Porzio did not provide the Brauser Team with a budget or course of action for Vapor in the Fontem Litigation.  The Brauser Team understood that Pre-Merger Porzio was instructed multiple times to keep the attorneys' fees to a minimum, in line with the average monthly billings of $34,887.19.

36.     Conveniently, and almost immediately after public announcement of the merger and the influx of capital, Porzio's billing to Vapor on the Fontem Litigation increased exponentially and became predatory.  The monthly (non-aggregate) invoice totals in the Post Merger period are as follows:

| | |
|---|---|
| April 2015 | $102,042.40 |
| May 2015 | $155,348.99 |
| June 2015 | $297,870.53 |
| July 2015 | $380,916.78 |
| August 2015 | $343,832.25 |
| September 2015 | $291,192.22 |
| October 2015 | $190,391.34 |
| November 2015 | $147,296.16 |
| December 2015 | $32,670.88 (*new counsel settled case for Vapor) |

37.     The invoices issued by Porzio from April 2015 through December 2015 totaled $1,941,561.55, which accounts for the attorneys' fees from Post Merger through the recent settlement of the Fontem Litigation.  In the eight month period from April through November, the average monthly invoice Post Merger was $238,611.33, a seven (7) times increase from the average monthly invoice Pre-Merger.

7

38.    Porzio immediately after the merger, and smelling new funding, took advantage of the corporate transition at Vapor and unilaterally engaged in a "leave no stone unturned" litigation strategy – or at least billed Vapor in line with that – without the input or informed consent of Vapor.

39.    Most troubling, is Post Merger, <u>every single attorney</u> in the Porzio Washington D.C. Office – eight in total – worked at the same time on the Fontem Litigation and billed Vapor. On top of that, Porzio billed Vapor monthly for a non-attorney IP Specialist and non-attorney Financial Analyst.  With no explanation or authorization, Porzio placed its entire Washington D.C. Office on the case, leaving Vapor to blindly foot the astronomical monthly bills.

40.    Pursuant to the Florida Rules of Professional Conduct, "[a]n attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost, or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar."  FL ST BAR Rule 4-1.5.

41.    A fee or cost is clearly excessive when:

> (1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or

> (2) the fee or cost is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.

FL ST BAR Rule 4-1.5.

42.    With multiple defendants, a joint defense agreement, and similarly situated interests in the Fontem Litigation it is unfathomable that Porzio's entire Washington D.C. Office was required to efficiently and conservatively defend the litigation.

8

43.     Porzio turned a blind eye to the best interest of its client, and instead seeing a pot of gold Post Merger, unilaterally decided to proceed forward with aggressive litigation attempting to swindle Vapor out of millions of dollars through unnecessary legal services allegedly rendered.

44.     Porzio failed to inquire whether Vapor intended to defend through "bare bones" litigation or to go "scorched earth." Porzio failed to inquire whether it should ride the coat-tails of one or more other defendants, some of which were much larger companies backed by "Big Tobacco," in order to save costs for Vapor.

45.     Porzio failed to set forth the costs in detail for various aspects of the case in order to allow Vapor to make a decision on any given course of action.

46.     Porzio failed to advise Vapor of anticipated significant increases in fees.

47.     Porzio entirely ignored Vapor's prior instructions to keep attorneys' fees to a minimum and to obtain Vapor's consent before significant fees were incurred.

48.     Needless to say, Porzio and the Bell Team failed to act in the best interest of the client, Vapor, and instead flagrantly embarked on predatory billing practices designed to reap the benefit of the $40 million capital raise.

**Porzio Remains Mum and Fails to Provide Any Case Analysis, Legal Advice, or Strategy to Vapor as it Continues to Churn the Billing Meter**

49.     Throughout the Post Merger period, Porzio failed to adequately communicate with Vapor on legal strategy, available options, and substantive decisions in direct violation of its self proclaimed "core values," in violation of the Engagement Letter, and in derogation of the most cursory ethical rules and its fiduciary responsibility.

50.     Upon information and belief, at the outset of the Fontem Litigation and Post Merger, Porzio failed to render to Vapor a comprehensive patent infringement opinion and patent

9

invalidity opinion that would have enabled Vapor and the Brauser Team to make an informed decision as to whether to incur the cost to continue to defend the case to finality or to immediately seek alternative and less expensive means of resolving the dispute.

51.     Porzio never sought the input of Vapor on any strategic or substantive decisions and entirely failed to inform Vapor of the advantages or disadvantages of the possible courses of action, including settlement.

52.     At best, Porzio periodically forwarded to Vapor various pleadings and Court documents with minimal explanation or advice.

53.     Ultimately, Porzio utterly failed to counsel Vapor of legal consequences and possible courses of action depriving Vapor of the opportunity and ability to properly consider the advice and decide upon a logical and financial beneficial course of action.

### Once Vapor Catches on Porzio Attempts to Cover its Wrongdoing

54.     After receiving yet another unexplained bombshell of an invoice, on or about August 11, 2015, Brauser voiced his extreme displeasure advising Porzio that the invoices are a "ridiculous amount of money especially in the last two months and I am not sure what was gained."

55.     In disbelief, Brauser further on or about August 20, 2015, initiated a telephone conference with Bell explaining that moving forward Brauser needs a budget and to be included on all communications to know what is occurring in the case, what the options are, and what the options will cost.  Brauser demanded that Porzio provide him with all previous correspondence in which Porzio communicated to Vapor its various options and the costs associated therewith. Brauser made clear that he was shocked by the lack of communication which inevitably was routinely followed by a mammoth invoice with no advanced explanation.

56.    In an effort to cover its wrongdoing, Bell and Porzio, on or about August 20, 2015, barraged Brauser with prior communications between Porzio and Vapor in effort to saddle Brauser with paper in hopes that the glaring lack of legal advice and case analysis would be overlooked. None of these communications contained advice of legal consequences and possible courses of action or a cost-benefit analysis.

57.    To add insult to injury, Porzio failed to provide Brauser with an updated and detailed budget, but rather provided Brauser with a litigation budget prepared in 2011 for Vapor, presumably for another matter.

**Porzio's Conduct Becomes Even More Suspect in its Alleged Settlement Efforts**

58.    Knowing full well that the plaintiffs in the Fontem Litigation were out for royalties and not a trial, Porzio failed to aggressively attempt to settle the case and, instead, pushed forward with expensive complex litigation, discovery and motion practice.

59.    Porzio should have realized Fontem's end goals of obtaining lucrative licensing deals and immediately engaged in settlement discussions when the case was filed, or at bare minimum explored these concepts with Vapor.

60.    Porzio, at best, made half hearted attempts at settlement – likely in fear of cutting off the billing mill it had created.

61.    Bell claims that he initiated "back-channeling" settlement discussions with Fontem over the two week period in late May 2015 when the parties were in Florida conducting depositions.

62.    In or about May and June, Bell with no rhyme or reason reached out to <u>an associate</u> on the Fontem litigation team to allegedly discuss settlement, and never attempted to speak with lead counsel or a main partner on the case.

11

63.     Frustrated with the lack of headway in settlement discussions, in or about July 2015, Holman, on behalf of Vapor, pressed Porzio to move forward with settlement and to arrange a meeting with the higher ups at Fontem.

64.     Holman also requested that Porzio explain the amount of damages that Fontem was seeking against Vapor.  Porzio – once again missing the opportunity to provide legal advice and a cost-benefit analysis – simply responded by letting Holman know that Fontem's expert damages report seeks $1.9 million in damages on a 9% royalty. Porzio failed to explain or advise Vapor as to the cost benefit of settling based on the damages sought by Fontem in comparison to the fees that were to be incurred in continuing in litigation.

65.     Instead, Bell represented to Vapor that his telephone calls and emails were left unreturned by Fontem and that Fontem was otherwise unwilling to engage in settlement talks.

66.     After the supposed "breakdown" in settlement talks Porzio continued to bury its head in the sand and pressed on with exorbitantly expensive discovery and motion practice during the next several months without meaningful communication and authorization from Vapor.

67.     Upon information and belief, Porzio did not want to explain the cost benefit analysis of settling because Porzio's attorneys' fees billed exceeded the damages sought by Fontem.

68.     Porzio's actions left Vapor feeling helpless and forced Vapor in or about October 2015 to retain outside intellectual property counsel, Geoffrey Lottenberg, Esq. ("Lottenberg"), to oversee the Fontem Litigation.

69.     Immediately upon becoming involved, on or about October 27, 2015, Lottenberg initiated a telephone conference with Bell and Oparil in order to be brought up to speed on the

12

status of the Fontem Litigation and prospects of reaching a settlement in the case. Bell stated that while there were some initial settlement discussions on or about July 2015, no progress had been made. Bell represented that, although he had placed several calls to Fontem's counsel regarding settlement, Fontem's counsel did not return his calls or e-mails and did not otherwise appear to be willing to engage in meaningful settlement discussions.

70.     Immediately following the telephone conference with Bell and Oparil, on or about October 27, 2015, Lottenberg contacted one of Fontem's attorneys, Joseph Hamilton ("Hamilton"), a partner, to introduce himself and inquire as to whether Fontem was interested in engaging in settlement discussions with Vapor.

71.     Without hesitation Hamilton informed Lottenberg that Fontem had a pre-prepared term sheet and proposed global license agreement available for Vapor's review and consideration as Fontem had already agreed to settle with two other defendants.

72.     Despite Porzio's purported efforts to settle the case for Vapor, on or about October 28, 2015, Hamilton explained to Lottenberg that he is unaware of any communication regarding settlement between counsel for Fontem and counsel for Vapor in the last few months.

73.     Lottenberg received the settlement documents on or about October 28, 2015 and immediately began settlement negotiations with Fontem, shortly thereafter settling the case for Vapor.

74.     Upon information and belief, Porzio had no bona fide intention of pursuing settlement and instead desired to accumulate extremely high fees putting its greed ahead of its client's, Vapor's, best interest.

75.     Porzio's failure to actively and aggressively pursue settlement throughout the course of the lawsuit was not in the best interests of Vapor.

13

76. Porzio took advantage of Vapor throughout the Fontem Litigation engaging in predatory billing practices, failing to advise the client of strategy, costs-benefit analysis, substantive analysis, or a course of action, failing to aggressively settle the case and instead billing and attempting to swindle Vapor out of $2,150,884.20, which is an excess of the amount Fontem sought in damages based on its damages expert report which was issued in July 2015.

77. Vapor retained the undersigned law firm and agreed to pay it reasonable costs and fees for its services.

## COUNT I
## LEGAL MALPRACTICE

78. Vapor re-alleges the allegations of paragraphs 1 through 77 as if fully set forth herein.

79. Vapor employed Porzio to represent Vapor in the Fontem Litigation.

80. Porzio as Vapor's counsel had an obligation of trust, loyalty, honesty, and integrity, to protect, preserve, and enhance Vapor's best interest.

81. Porzio neglected its reasonable duties owed to Vapor as follows:

    a. Failed to serve the best interest of its client, Vapor;

    b. Failed to make Vapor its paramount responsibility;

    c. Failed to listen to Vapor and understand Vapor's needs and goals;

    d. Failed to efficiently employ resources, substantive knowledge, skills, and experiences to achieve Vapor's objectives;

    e. Failed to charge reasonable costs, expenses, and legal fees;

    f. Failed to disclose work to be performed and the corresponding amount of monthly legal fees to be incurred;

    g. Failed to properly and efficiently staff the case;

    h. Failed to allow Vapor to make all final decisions;

    i. Failed to inform Vapor at reasonable intervals of the progress of the case;

14

j.      Failed to use its best professional and ethical efforts;

k.      Failed to counsel Vapor and advise of legal consequences and possible courses of action;

l.      Failed to set forth the costs in detail or in a budget for various aspects of the case in order to allow Vapor to make an informed decision on any given course of action;

m.      Failed to advise Vapor of anticipated significant increases in fees;

n.      Failed to render a comprehensive patent infringement opinion and patent invalidity opinion;

o.      Failed to provide Vapor with a cost-benefit analysis, including comparing Fontem's expert damages verses the cost of litigation; and

p.      Failed to aggressively attempt to settle the case.

82.    Porzio's negligence was the proximate cause of Vapor's damages.

83.    Vapor reserves the right to amend this Complaint to seek punitive damages, pursuant to Fla. Stat. § 768.72.

**WHEREFORE**, Vapor, demands judgment against Porzio for damages, pre-judgment interest, costs, and such other and further relief as this Court deems just and proper.

## COUNT II
## BREACH OF FIDUCIARY DUTY

84.    Vapor re-alleges the allegations of paragraphs 1 through 77 as if fully set forth herein.

85.    Vapor employed Porzio to represent Vapor in the Fontem Litigation.

86.    Vapor relied upon Porzio and reposed its trust and confidence in Porzio as Vapor's counsel to act fairly, honestly, and to protect, preserve, and enhance Vapor's best interest.

87.    Porzio intended, knew, and accepted that Vapor was relying on Porzio for advice and to protect Vapor's best interest.

15

88.   By Vapor's placement of trust and confidence in Porzio, Porzio gained influence and superiority over Vapor.

89.   Porzio breached its fiduciary duties owed to Vapor as follows:

    a.   Failed to serve the best interest of its client, Vapor;

    b.   Failed to make Vapor its paramount responsibility;

    c.   Failed to listen to Vapor and understand Vapor's needs and goals;

    d.   Failed to efficiently employ resources, substantive knowledge, skills, and experiences to achieve Vapor's objectives;

    e.   Failed to charge reasonable costs, expenses, and legal fees;

    f.   Failed to disclose work to be performed and the corresponding amount of monthly legal fees to be incurred;

    g.   Failed to properly and efficiently staff the case;

    h.   Failed to allow Vapor to make all final decisions;

    i.   Failed to inform Vapor at reasonable intervals of the progress of the case;

    j.   Failed to use its best professional and ethical efforts;

    k.   Failed to counsel Vapor and advise of legal consequences and possible courses of action;

    l.   Failed to set forth the costs in detail or in a budget for various aspects of the case in order to allow Vapor to make an informed decision on any given course of action;

    m.   Failed to advise Vapor of anticipated significant increases in fees;

    n.   Failed to render a comprehensive patent infringement opinion and patent invalidity opinion;

    o.   Failed to provide Vapor with a cost-benefit analysis, including comparing Fontem's expert damages verses the cost of litigation; and

    p.   Failed to aggressively attempt to settle the case.

109.   Vapor suffered damages as a direct and proximate result of Porzio's breaches of its fiduciary duties.

16

110.    Vapor reserves the right to amend this Complaint to seek punitive damages, pursuant to Fla. Stat. § 768.72.

**WHEREFORE**, Vapor demands judgment against Porzio, for damages, pre-judgment interest, costs, and for any such other relief the Court deems appropriate.

### COUNT III – BREACH OF CONTRACT

111.    Vapor re-alleges the allegations of paragraphs 1 through 77 as if fully set forth herein.

112.    Porzio and Vapor are parties to the Engagement Letter.

113.    Porzio breached the Engagement Letter by failing to allow Vapor to make all final decisions throughout the Fontem Litigation, failing to reasonably inform Vapor as to how the litigation progressed, failing to use its best professional and ethical efforts on behalf of Vapor, failing to advise of legal consequences and possible courses of action, and failing to charge a reasonable fee for services rendered.

114.    As a result of Porzio's breaches, Vapor has been damaged.

**WHEREFORE**, Vapor demands judgment against Porzio for damages, prejudgment interest, Court costs, and such other and further relief as this Court deems just and proper

### COUNT IV
### UNJUST ENRICHMENT

115.    Vapor re-alleges the allegations of paragraphs 1 through 77 as if fully set forth herein.

116.    Vapor conferred a benefit upon Porzio, who had knowledge thereof, including paying for attorneys' fees billed throughout the Fontem Litigation for legal services by Porzio that either were not performed or improperly and negligently performed.

117.    Porzio voluntarily accepted and retained the benefits conferred.

17

118.   Under the circumstances, it would be inequitable for Porzio to retain the benefit conferred by Vapor without duly compensating Vapor.

**WHEREFORE,** Vapor, demands judgment against Porzio for damages, prejudgment interest, Court costs, and such other and further relief as this Court deems just and proper.

### COUNT V
### NEGLIGENCE

119.   Vapor re-alleges the allegations of paragraphs 1 through 77 as if fully set forth herein.

120.   Porzio, as a legal professional, owed a duty of reasonable care to Vapor in connection with its representations of Vapor in the Fontem Litigation.

121.   Porzio breached its duty of reasonable care owed to Vapor.

122.   Vapor suffered damages as a direct and proximate result of Porzio's breach of its reasonable duty of care to Vapor.

**WHEREFORE,** Vapor, demands judgment against Porzio for damages, prejudgment interest, Court costs, and such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Vapor demands trial by jury of all issues triable by jury as by right.

**Dated: December 30, 2015**

18

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN,**
**KATZEN & LEVINE, P.L.**
*Attorneys for Vapor Corp.*
Miami Center, Twenty Seventh Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428


By: */s/ Philippe Lieberman*
       **PHILIPPE LIEBERMAN**
       Fla. Bar No. 0027146
       plieberman@klugerkaplan.com
       **RICHARD I. SEGAL**
       Florida Bar No. 57187
       rsegal@klugerkaplan.com

19

# EXHIBIT "A"



# PORZIO
**BROMBERG & NEWMAN P.C.**

ATTORNEYS AT LAW          MORRISTOWN NJ • NEW YORK NY • PRINCETON NJ • WASHINGTON DC • WESTBOROUGH MA

KEVIN M. BELL
MEMBER, MD BAR
PRACTICE LIMITED TO MATTERS
BEFORE FEDERAL COURTS AND AGENCIES
DIRECT DIAL NO.: 202-517-6323
E-MAIL ADDRESS: KMBELL@PBNLAW.COM

October 17, 2014

**VIA E-MAIL**

Harlan Press
Vapor Corporation
3001 Griffin Road
Ft. Lauderdale, FL 33312

Re:    Engagement Letter

Dear Harlan,

Thank you very much for allowing Porzio, Bromberg & Newman, P.C. to represent Vapor Corporation. We greatly appreciate your willingness to allow us to represent you at our new firm since our arrival on September 1, 2014. We look forward to continuing our working relationship with you.

You have hired us for our legal expertise and we will use our best judgment in handling this matter or any other matter for which you engage us. However, you retain the right to make all final decisions regarding this or any other matter. Additionally, you should expect to be informed at reasonable intervals as to how a matter is progressing and to have your questions answered to the best of our ability.

We have found that our clients appreciate seeing the terms of our engagement set forth in writing. The purpose of this letter is to clarify our mutual expectations and avoid any misunderstandings. If you disagree in whole or in part with your obligations as set forth in this letter, you should immediately let the law firm know.

## Scope of Work

You have requested that we represent you in various intellectual property and related matters. Unless and until we jointly agree on the terms of further representation, our representation is limited to the foregoing. If we are not retained to represent you in other matters, our attorney-client relationship will end upon completion of our services in this matter.

1200 NEW HAMPSHIRE AVENUE NW, SUITE 710
WASHINGTON, DC 20036-6802
TELEPHONE (202) 517-1888
FAX (202) 517-6322
www.pbnlaw.com

2894037



**PORZIO**
BROMBERG&NEWMAN P.C.

ATTORNEYS AT LAW

Harlan Press
October 17, 2014
Page 2

While we cannot guarantee that your objectives in this or any other matter will be completely and successfully obtained, we will, in good faith, use our best professional and ethical efforts on your behalf. The final result of the matter will depend on many factors and neither we nor any other law firm are able to guarantee or assure the result of any matter. Payment of fees and disbursements is not contingent upon any results or other occurrence.

### Personnel

Your primary contact at the firm will be me, but you should feel free to contact Richard Oparil or Scott Chambers if it is convenient or helpful for you to do so. We will also draw from appropriately experienced personnel within our firm to handle your matter.

### Records and Documents

During the course of our representation we will retain copies of documents generated, but you should retain all originals and other copies because you may in the future find that they are necessary or that further action is required after a matter is concluded. We will return all important documents to you. Files and records that remain with us after our engagement has been completed may thereafter be destroyed in accordance with our Records Retention Policy.

### Your Role As Client/Our Role As Attorney

You have asked that we represent Vapor Corporation as our client. Our role is to counsel you and advise you of legal consequences and possible courses of action. Your role is to consider our advice and to decide upon the course of action to follow. There may be numerous procedural matters with which we may have to deal during the course of representation, and as to such procedural matters, we shall have the exclusive right to determine how to proceed.

Since our representation involves important legal advice, we will need your full cooperation. This cooperation may include your attending court proceedings and depositions and your providing us with documentation and other information as we request. You must understand that your failure to cooperate with us and to provide us with complete and accurate information may compromise our ability to represent you and may result in court-imposed sanctions against you.

Also, we need to be able to contact you at all times. If you have a mail or email address or telephone number change, please advise us immediately.



**PORZIO**
BROMBERG&NEWMAN P.C.

ATTORNEYS AT LAW

Harlan Press
October 17, 2014
Page 3

### Fees and Expenses

Our objective of charging a reasonable fee for our services is achieved through maintaining accurate records by each attorney and paraprofessional and then billing for that time in accordance with a range of hourly rates we establish based on the individual's experience and level of expertise.

The current hourly billing rate for Richard Oparil, Scott Chambers and me is $750 per hour. I anticipate that we will be assisted in this matter by other attorneys where necessary, working under our supervision. Their rates range from $350 to $600 per hour, depending upon experience. In addition, we employ paraprofessionals and paralegal personnel. Time expended by law clerks and paralegals is charged at $150 to $275 per hour depending upon experience. We adjust our hourly rates on January 1st of each year. We will advise you of any such changes in advance.

We have agreed to discount our billing rates regarding the scope of our legal work as follows:

Partners – 20%; counsel and associates – 20%.

In addition to charges for services rendered, we will bill for the reasonable costs and disbursements that we incur and typically pay during the course of our representation of a client. These may include filing fees, costs of outside investigators, court reporter fees, fees for service of papers, witness fees, messenger services, telephone toll costs, postage and costs of travel in connection with our representation of you. In addition, we charge for the certain in-house services which may be provided such as: photocopies, binding of briefs and similar material, outgoing facsimile transmissions, and use of computer-assisted research. These charges will be identified in our statement.

We will be submitting statements monthly, or as otherwise agreed. These statements will describe the services rendered, the attorney or paraprofessional rendering such services, and the amount of time spent performing such service.

If you have any questions concerning any item appearing on your statement, it is your responsibility to bring your questions to our attention within 30 days of the date of the statement. Because we have our own expenses to pay on a regular basis, we must reserve the right to suspend, postpone or defer the provision of additional services or discontinue our representation if our statements are not paid within 30 days. Any damage or loss suffered by you as a result of our failure to perform legal services or work in regard to this matter due to the failure to pay on time cannot be considered the fault of our firm. Likewise, failure to pay an invoice within 30 days will constitute your consent for our withdrawal from our representation.

If you would like, we will attempt to estimate fees and expenses for this or any other matter that we are engaged to handle. However, this is only an estimate and actual fees and expenses incurred are a result of many conditions, a number of which are beyond our control. If any factor occurs that may cause a significant change in our estimate, we will try to let you know as soon as possible.



**PORZIO**
BROMBERG&NEWMAN P.C.

ATTORNEYS AT LAW

Harlan Press
October 17, 2014
Page 4

Our firm's Billing Policy, which details our billing principles and practices, is included with this letter. If you ever have any questions about our billing procedures or statements, please ask us. We prefer to address these issues so that you fully understand the procedures and our statements and are satisfied with them. We want you to be frank with us should you have any concerns.

### Termination

Either one of us may terminate this engagement, with or without cause, by notifying the other in writing. Any termination must be consistent with the Rules of Court when they are applicable. We will try to identify in advance and discuss any situation that may lead to our withdrawal and, if withdrawal becomes necessary, we will provide prompt written notice. Upon termination by either of us, we will comply with all applicable ethical concerns and considerations at the termination of our representation and we agree to perform whatever steps are necessary to complete our withdrawal, including execution of any documents, and you agree to pay for all services rendered and expenses incurred on your behalf prior to withdrawal and in connection with an orderly transition of this matter.

### Porzio, Bromberg & Newman, P.C.'s Tenets of Professionalism

As you may be aware we are bound by certain ethical rules, including the Rules of Professional Conduct. Those rules require that we show fairness to opposing parties and opposing counsel. While we intend to represent your interests diligently and faithfully, we shall, of course, appropriately adhere to the Professional Code standards.

We would be pleased to discuss with you the availability of alternative and complementary dispute resolution programs and procedures to the extent they may be applicable to this matter or any other matter for which we are representing you. Such programs include mediation, arbitration, and settlement techniques that are endorsed by the courts.

If you have any questions concerning the contents of this letter, please feel free to contact me.

Again, we appreciate your employing Porzio, Bromberg & Newman, P.C. for this representation, and we look forward to working with you.

Very truly yours,

Kevin M. Bell

2894037